J (x)
ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG – 1 2001

, CLERK, U.S. DISTRICT COURT
By _____
            Deputy

ADVANTAGE SCHOOLS, INC.,                    )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )      Docket No. _____
                                            )
CHARTER SCHOOLS USA, INC., MELINDA          )
WHEATLEY, NEW FRONTIERS CHARTER             )      **8 01 – C V1 4 7 9 – M**
SCHOOL, INC., MIDLAND ACADEMY               )
CHARTER SCHOOL, INC., HOUSTON               )
GATEWAY ACADEMY, INC., and OAK CLIFF        )
ACADEMY, INC.,                              )
                                            )
            Defendants.                     )
                                            )

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

This is a diversity action for tortious interference with contractual relations and anticipatory breach of contract. Advantage Schools, Inc. ("Advantage Schools") is a private management company based in Massachusetts that operates and provides educational management services throughout the country to charter schools and other organizations and entities. Charter Schools USA, Inc. ("CSU") is also a private management company, based in Florida, that operates and manages charter schools. CSU, in concert with a member of the board of directors for the defendant charter schools, intentionally and improperly interfered with management services contracts between Advantage Schools and each of the four defendant charter schools, causing the charter schools to breach their contracts with Advantage Schools and award new management contracts to CSU.

## PARTIES

1.      Plaintiff Advantage Schools is a Delaware corporation with a principal place of business in Boston, Massachusetts.

2.      Defendant CSU is, on information and belief, a Florida corporation with a principal place of business in Fort Lauderdale, Florida.  CSU may be served with process by and through John Hage its President and Chief Executive Officer at 6245 N. Federal Highway, 5th Floor, Fort Lauderdale, Floriad 33308.

3.      Defendant Melinda Wheatley is, on information and belief, a resident of Texas, residing at 402 Loop Street, Buda, Texas.

4.      Defendant New Frontiers Charter School, Inc. ("New Frontiers") is, on information and belief, a Texas non-profit corporation and the grantee of a charter from the Texas State Board of Education, with a principal place of business in San Antonio, Texas.  New Frontiers may be served with process by and through its Chairman of the Board, Melinda Wheatley at 402 Loop Street, Buda, Texas.

5.      Defendant Houston Gateway Academy, Inc. ("Gateway") is, on information and belief, a Texas non-profit corporation and the grantee of a charter from the Texas State Board of Education, with a principal place of business in Houston, Texas.  Gateway may be served with process by and through its Chairman of the Board, Melinda Wheatley at 402 Loop Street, Buda, Texas.

6.      Defendant Midland Academy Charter School, Inc. ("Midland") is, on information and belief, a Texas non-profit corporation and the grantee of a charter from the Texas State Board of Education, with a principal place of business in Midland, Texas.  Midland may be served with

process by and through its Chairman of the Board, Melinda Wheatley at 402 Loop Street, Buda, Texas.

7.      Defendant Oak Cliff Academy, Inc. ("Oak Cliff") is, on information and belief, a Texas non-profit corporation and the grantee of a charter from the Texas State Board of Education, with a principal place of business in Dallas, Texas.  Oak Cliff may be served with process by and through its Chairman of the Board, Melinda Wheatley at 402 Loop Street, Buda, Texas.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332 as there exists complete diversity and the amount in controversy exceeds the statutory threshold of $75,000.

9.      Venue is proper in this district pursuant to 28 U.S.C. Section 1391(a) as a substantial part of the events giving rise to the claim occurred within this district.

## FACTS

10.      Advantage Schools is engaged in the business of assisting other entities to petition for and obtain charters for the establishment of charter schools.  Once a charter school is established, Advantage Schools offers a gamut of educational and other management services to the school through a management services contract.

11.      As a core part of its business, Advantage Schools devotes substantial resources to providing educational management services, including siting, leasing, purchasing or building school facilities; raising funds for school operations; recruiting and employing school faculty, staff, and administrative personnel; recruiting and enrolling students; and developing and establishing curricula.

**COMPLAINT AND JURY DEMAND**                                                    **PAGE 3**
S:\buslit\11358\0002\Pleadings\complaint.wpd

12.     In consideration for providing these comprehensive educational management services, Advantage Schools charges a monthly management fee.

13.     In or about March 1998, Advantage Schools, through its former Chief Financial Officer, Glenn R. Pierce, established contact with two individuals, Melinda Wheatley and Michael Krusee, both Texas residents, who were in the planning stages of establishing a charter school in San Antonio, Texas.

14.     Pierce was terminated for cause by Advantage Schools in or about August 1999.

15.     In or about July 1998, Wheatley and Krusee, along with William Siebert, founded the San Antonio Advantage Charter School, Inc., now known as the defendant New Frontiers.

16.     On information and belief, in or about August 1999, Wheatley and Krusee founded three additional charter schools: (a) the Houston Advantage Charter School, Inc., now known as the defendant Gateway; (b) the Midland Advantage Charter School, Inc., now known as the defendant Midland; and (c) the Dallas Advantage Charter School, Inc., now known as the defendant Oak Cliff. (Hereinafter New Frontiers, Gateway, Midland and Oak Cliff are collectively referred to as the "Charter Schools").

17.     On information and belief, Wheatley and Krusee presently serve as members on the board of directors of each of the four Charter Schools, and each has substantial influence over the overall direction and operation of each of the four Charter Schools.  On information and belief, Wheatley currently serves as Chair of the board of directors for New Frontiers, Gateway and Midland.

18.     On or about July 13, 1998, Advantage Schools entered into a five-year Charter School Management Contract with New Frontiers to manage the daily operations of and to provide educational services to New Frontiers.

19.     On or about August 24, 1999, Advantage Schools entered into substantially similar five-year Charter School Management Contracts with each of Gateway, Midland, and Oak Cliff to manage the daily operations of and to provide educational services to each of those charter schools.

20.     By September 1999, Advantage Schools had helped obtain charters for and had begun operating the four Charter Schools pursuant to separate Charter School Management Contracts (the "Management Contracts").

21.     Pursuant to Section 7.1 of each Management Contract, the initial term of each Management Contract was for a period of five years, with an automatic renewal provision.

22.     Pursuant to Section 7.2 of each Management Contract, each Charter School was permitted to terminate its contract at the end of the then-current five-year term, with four months prior written notice, only if Advantage Schools failed to achieve and maintain minimum student academic testing performance prior to the end of the then-current five-year term, as defined in Section 4.5 of their Management Contract, or for any reasons specifically enumerated in Section 8.1 of their Management Contract.

23.     In or about January 2001, the Charter Schools, through Wheatley and Krusee, approached Advantage Schools in an effort to negotiate amendments to each of the Management Contracts that would have required each Charter School, beginning in June 2001, to meet certain academic performance standards on an annual basis, as opposed to prior to the end of the then-current five-year term, as contemplated by Section 4.5 of the Management Contracts.

24.     The parties never executed the proposed amendments to the Management Contracts, and the terms of the original Management Contracts remain in effect.

25.     On information and belief, CSU hired Advantage Schools' former CFO, Pierce, to work out of its offices in Fort Lauderdale, Florida. On information and belief, Pierce is now CSU's Executive Vice President.

26.     On information and belief, since his termination from Advantage Schools in 1999, Pierce and/or others from CSU have been in communication with Wheatley and Krusee in an attempt to induce the Charter Schools to contract with CSU for management services for the Charter Schools.

27.     Through Pierce, or separately on its own, CSU was aware that each of the Charter Schools had existing contracts with Advantage Schools.

28.     On information and belief, in or about the spring of 2001, Pierce and/or others from CSU were in contact with one or more of the Charter Schools about providing educational management services to the Charter Schools to replace Advantage Schools.

29.     In or about June 2001, each Charter School issued a Request for Proposal (the "RFPs") for a new management company to replace Advantage Schools beginning with the 2001-2002 school year, even though each Charter School was still under a valid and enforceable Management Contract with Advantage Schools.

30.     Prior to issuing the RFPs, none of the Charter Schools provided Advantage Schools with any termination notice under the Management Contracts.

31.     On or about July 16, 2001, Geoffrey W. Swett, President of Advantage Schools, sent a letter to each Charter School reminding each that the Management Contracts were valid and

enforceable and that Advantage Schools was fully prepared to continue with its performance under the Management Contracts.

32.     On or about July 17, 2001, Geoffrey W. Swett sent a letter to Jon Hage, President and Chief Executive Officer of CSU, notifying CSU that Advantage Schools had valid and enforceable Management Contracts with each of the four Charter Schools and informing CSU that Advantage Schools viewed any effort to entice the Charter Schools to terminate their Management Contracts as tortious interference with contractual relations. On or about that same date, Swett also called and left a voice-mail message for Hage.

33.     CSU did not respond to the July 17, 2001 letter, and Hage never responded to the voice-mail message from Swett.

34.     On information and belief, CSU responded to the RFPs and requested that the Charter Schools terminate their Management Contracts with Advantage Schools and award management contracts for each of the Charter Schools to CSU.

35.     On or about July 24, 2001, counsel for New Frontiers wrote to Advantage Schools to indicate that the New Frontiers Management Contract had been terminated and that New Frontiers had voted to retain CSU as its new management contractor.

36.     In violation of the express terms of the Management Contracts, the Charter Schools have each awarded contracts to CSU to replace Advantage Schools as the management company for the 2001-2002 school year. On information and belief, the actions of the Charter Schools in voting to award contracts to CSU violated the Texas open meeting laws.

37.     Advantage Schools has valid and enforceable employment contracts with the faculty and staff at each of the Charter Schools.

**COMPLAINT AND JURY DEMAND**                                                      PAGE 7
S:\buslit\11358\0002\Pleadings\complaint.wpd

38.     On information and belief, CSU was aware of these employment contracts when it agreed to replace Advantage Schools.

39.     Notwithstanding its knowledge of these employment contracts, CSU contacted and began directing faculty and staff at the Charter Schools to implement curriculum changes, causing the faculty and staff to breach their employment contracts with Advantage Schools.

## COUNT I

*(Tortious Interference With Contractual Relations  -  against CSU)*

40.     Advantage Schools repeats, reavers and incorporates by reference Paragraphs 1 through 39 above.

41.     The Management Contracts between the Charter Schools and Advantage Schools are valid and binding.

42.     The employment contracts between Advantage Schools and the faculty and staff at the Charter Schools are valid and binding.

43.     Advantage Schools has fully complied with its obligations under the Management Contracts.

44.     Advantage Schools has fully complied with its obligations under the employment contracts.

45.     CSU was independently aware of the existence and terms of each of the Management Contracts, and was put on further notice by Advantage Schools of the existence of the Management Contracts.

46.     CSU was independently aware of the existence of the employment contracts between Advantage Schools and the faculty and staff at the Charter Schools.

47.     By its actions, CSU willfully, intentionally and improperly interfered with the Management Contracts.

48.     By its actions, CSU willfully, intentionally and improperly interfered with the employment contracts between Advantage Schools and the faculty and staff at the Charter Schools.

49.     As a direct and proximate cause of CSU's actions, Advantage Schools has lost the benefits of the Management Contracts and the employment contracts, and will suffer substantial and irreparable harm in the immediate future.

## COUNT II

*(Tortious Interference With Contractual Relations - against Melinda Wheatley)*

50.     Advantage Schools repeats, reavers and incorporates by reference Paragraphs 1 through 49 above.

51.     Melinda Wheatley presently sits on the board of directors for each of the four Charter Schools, and serves as Chair of the board of directors for New Frontiers, Gateway and Midland.

52.     On information and belief, Wheatley has substantial influence over the overall direction and operation of each of the four Charter Schools.

53.     On information and belief, Wheatley is on the payroll, either as an employee or consultant, of a company called K12 and is under the supervision of Ron Packard. Packard is the CEO of K12 and a vice president of K12's parent company, Knowledge Universe, which, on information and belief, has a substantial ownership interest in the defendant CSU.

54.     Wheatley was independently aware of the existence and terms of each of the Management Contracts and the employment contracts between Advantage Schools and the faculty and staff at the Charter Schools.

**COMPLAINT AND JURY DEMAND**                                                      PAGE 9
S:\buslit\11358\0002\Pleadings\complaint.wpd

55.     On information and belief, Wheatley made a concerted effort to replace Advantage Schools as the management service provider for each of the four Charter Schools.

56.     On information and belief, Wheatley made a concerted effort to have the Charter Schools award a new management services contract to CSU.

57.     By her actions, Wheatley acted outside of the scope of her duties as a board member for the Charter Schools and instead acted for the benefit of CSU and Knowledge Universe.

58.     By her actions, Wheatley violated Section 12.120 of the Texas education statute regarding open-enrollment charter schools.

59.     By her actions, Wheatley caused the boards of the Charter Schools to violate the Texas open meeting laws.

60.     By her actions, Wheatley willfully, intentionally and improperly interfered with the Management Contracts.

61.     By her actions, Wheatley willfully, intentionally and improperly interfered with the employment contracts between Advantage Schools and the faculty and staff at the Charter Schools.

62.     As a direct and proximate cause of Wheatley's actions, Advantage Schools has lost the benefits of the Management Contracts and the employment contracts, and will suffer substantial and irreparable harm in the immediate future.

## COUNT III

*(Civil Conspiracy – against CSU and Melinda Wheatley)*

63.     Advantage Schools repeats, reavers and incorporates by reference Paragraphs 1 through 62 above.

64.     On information and belief, Wheatley and CSU intended and conspired to terminate the Management Contracts between Advantage Schools and the Charter Schools and to have the Charter Schools award new management contracts to CSU.

65.     By her actions, Wheatley acted outside of the scope of her duties as a board member for the Charter Schools and instead acted for the benefit of CSU and Knowledge Universe.

66.     By their actions, Wheatley and CSU tortiously interfered with known existing and valid contracts between Advantage Schools and the Charter Schools.

67.     By their actions, Wheatley and/or CSU violated provisions of the Texas education statute regarding open-enrollment charter schools and the Texas open meeting laws.

68.     As a direct and proximate cause of CSU and Wheatley's actions, Advantage Schools has lost the benefits of the Management Contracts and the employment contracts, and will suffer substantial and irreparable harm in the immediate future.

## COUNT IV

*(Punitive Damages - against CSU and Melinda Wheatley)*

69.     Advantage Schools repeats, reavers and incorporates by reference Paragraphs 1 through 68 above.

70.     By her actions, Wheatley acted outside of the scope of her duties as a board member for the Charter Schools and instead acted for the benefit of CSU and Knowledge Universe.

71.     By their actions, Wheatley and CSU tortiously interfered with known existing and valid contracts between Advantage Schools and the Charter Schools.

72.     By their actions, Wheatley and/or CSU violated provisions of the Texas education statute regarding open-enrollment charter schools and the Texas open meeting laws.

**COMPLAINT AND JURY DEMAND**                                              PAGE 11
S:\buslit\11358\0002\Pleadings\complaint.wpd

73.     By their actions, Wheatley and CSU intentionally, willfully and maliciously sought to deprive Advantage Schools of the benefits of the Management Contracts.

74.     As a direct and proximate cause of CSU and Wheatley's actions, Advantage Schools has lost the benefits of the Management Contracts and the employment contracts, and will suffer substantial and irreparable harm in the immediate future.  For these reasons, Advantage Schools requests that the CSU and Wheatley be ordered to pay punitive damages as a result of their willful conduct.

## COUNT V

*(Anticipatory Repudiation (Breach of Contract) –*
*against New Frontiers, Gateway, Midland, and Oak Cliff)*

75.     Advantage Schools repeats, reavers and incorporates by reference Paragraphs 1 through 74 above.

76.     Advantage Schools and each of the Charter Schools have valid and enforceable Management Contracts.

77.     Advantage Schools has fully performed its duties and obligations under the Management Contracts and gave each Charter School written notice of reassurance that Advantage Schools was prepared to continue performance under the Management Contracts.

78.     By issuing and awarding the RFPs to CSU to replace Advantage Schools as the management company for each Charter School for the 2001-2002 school year, each of the Charter Schools made an unconditional declaration of its fixed intention to abandon, renounce, and refuse to perform the Management Contracts in the future, for which Advantage is entitled to recover damages and obtain equitable relief.

79.     The Charter Schools' actions constitute an absolute repudiation of their respective Management Contracts.

80.     As a direct and proximate cause of the Charter Schools' actions, Advantage Schools has lost the benefits of the Management Contracts and the employment contracts, and will suffer substantial and irreparable harm in the immediate future.

## COUNT VI

### (Injunctive Relief - against all parties)

81.     Advantage Schools repeats, reavers and incorporates by reference Paragraphs 1 through 80 above.

82.     Advantage Schools has invested considerable time and money in the development of its curriculum and other educational services.

83.     Advantage Schools is the owner of the real and personal property, as well as the curriculum, that the Charter Schools intend to use to provide educational services through their new management services company, CSU.  Neither the Charter Schools nor CSU have any ownership interest in that real and personal property.

84.     On information and belief, the Charter Schools will be financially unable to compensate CSU under a new management contract and pay the amounts owed to Advantage Schools under the existing Management Contracts and amounts owed under the existing lease agreements for the real property needed for the school facilities.

85.     On information and belief, the state-granted charters of each Charter School are subject to revocation under Texas law if the Charter Schools do not continue to abide by the terms and conditions of the Management Contracts with Advantage Schools.

86.     By granting new management contracts to CSU and by interfering with the employment contracts between Advantage Schools and its staff and employees, the defendants have immediately and substantially interfered with Advantage Schools' ability to prepare for the beginning of the 2001-2002 school year.

87.     By and through their actions, the defendants have tarnished and will continue to further tarnish the goodwill and reputation of Advantage Schools in Texas and elsewhere.

88.     As a direct and proximate cause of the defendants' actions, Advantage Schools has suffered substantial and irreparable harm and will continue to suffer substantial and irreparable harm in the immediate future.

## PRAYER FOR RELIEF

Plaintiff Advantage Schools, Inc. prays that this Court:

(a)     award Advantage Schools compensatory, consequential and extra-contractual damages stemming from the defendants' interference with and/or breaches of the Management Contracts and employment contracts, plus interest, costs and reasonable attorneys' fees;

(b)     award Advantage Schools damages for use of the real and personal property at the school facilities that is the property of Advantage Schools, plus interest, costs and reasonable attorneys' fees;

(c)     award Advantage Schools punitive damages;

**COMPLAINT AND JURY DEMAND**                                                    PAGE 14
S:\buslit\11358\0002\Pleadings\complaint.wpd

(d)   enjoin CSU and Wheatley from further interfering with Advantage Schools' contractual relations with the Charter Schools and their faculty and staff;

(e)   enjoin each of the Charter Schools from enforcing and/or awarding the RFPs to CSU or any other management company and from replacing Advantage Schools as the management company for the Charter Schools;

(f)   enjoin the Charter Schools and CSU from future use of the real and personal property, including the curricula, that is the property of Advantage Schools;

(g)   order the Charter Schools to immediately post a bond with the Court in an amount equal to the outstanding sums due under the Management Contracts; *and*

(h)   award Advantage Schools such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

ADVANTAGE SCHOOLS, INC.,

By its attorneys,

David L. Patterson
State Bar No. 15587400
Kenneth W. Rockenbach
State Bar No. 24002856
Godwin White Gruber,
A Professional Corporation
901 Main Street, Suite 2500
Dallas, Texas 75202-3727
(214) 939-4400
(214) 760-7332 – Facsimile

Dated: August 1, 2001

**COMPLAINT AND JURY DEMAND**                                                          **PAGE 15**
S:\buslit\11358\0002\Pleadings\complaint.wpd

*Of Counsel:*
Natalie S. Monroe (BBO #562383)
Jason W. Morgan (BBO #633802)
Benjamin Bejar (BBO #641049)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800